695 So.2d 1326 (1997)
Marjorie POWELL
v.
REGIONAL TRANSIT AUTHORITY and Louise Singleton.
No. 96-C-0715.
Supreme Court of Louisiana.
June 18, 1997.
*1327 Harold Menton Whellahan, III, John Gregory Odom, Walter Igantius Willard, New Orleans, for applicant.
Neil Jay Kohlman, Avis Marie Russell, New Orleans, for respondent.
Lawrence S. Kullman, New Orleans, for amicus curiae Louisiana Trial Lawyers.
William Hestor Howard, III, New Orleans, for amicus curiae Louisiana Ass'n of Defense Counsel.
LEMMON, Justice.[*]
This is an action to recover tort damages from the Regional Transit Authority (RTA), a political subdivision of the state, and Louise Singleton, the RTA employee who drove the transit bus that allegedly caused plaintiff's injuries. The matter proceeded to a bifurcated trial, with the judge deciding the liability of the governmental body and the jury deciding the liability of the individual employee. The jury returned a verdict finding no negligence on the employee's part, but the trial judge ruled that the RTA was vicariously liable for the employee's negligence expressly found by the judge. We granted certiorari to determine whether the bifurcated trial was appropriate when the lone tortfeasor was an employee of a governmental body that was not subject to a jury trial and the governmental body was vicariously liable for the fault of the employee.

Facts
Plaintiff was a police officer who was injured in a vehicular accident while on duty. Just before the accident, Officer Jones, the driver of the police unit in which plaintiff was a passenger, activated the unit's flashing lights to stop a moving vehicle that had disregarded a traffic signal. Officer Jones stopped directly behind the traffic violator and left the unit, with its lights flashing, to issue a citation. Plaintiff remained in the unit to complete other paperwork.
*1328 Upon Officer Jones' return to the police unit, an RTA bus operated by defendant Louise Singleton turned the nearby corner and attempted to pass the police unit. The right rear of the bus struck the slightly open driver's door of the police unit.[1] The impact caused the police unit to move forward and strike the traffic violator's vehicle.
In this action to recover damages sustained in the accident, plaintiff alleged that Singleton was negligent in operating the bus and that the RTA was negligent in hiring and using an unqualified driver.[2] After a bifurcated trial, the jury and the judge reached conflicting conclusions as to Singleton's negligence. The jury found Singleton free from fault. The judge, however, finding that the most credible witness was a passenger on the bus and that the bus driver should have seen the flashing lights on the police unit as she turned the corner, allocated five percent fault to Singleton and ninety-five percent fault to Officer Jones, plaintiff's immune co-employee. The judgment dismissed Singleton in accordance with the jury verdict, but held the RTA liable on the basis of Singleton's negligence, in accordance with the judge's findings.
On post-trial motion, the judge granted plaintiff's motion for judgment notwithstanding the verdict (JNOV) and rendered judgment in favor of plaintiff. Defendants appealed.
The court of appeal reversed the judgment of the trial court in an unpublished opinion. Reviewing the record and concluding that reasonable persons viewing the evidence could have reached different results as to Singleton's negligence, the intermediate court set aside the JNOV. The court then proceeded to review the jury's verdict under the manifest error standard. Concluding that the jury's determination of no negligence on the part of Singleton was reasonably supported by the evidence, the court rendered judgment in favor of Singleton and dismissed plaintiff's action.
We granted certiorari because the issue of reconciling inconsistent decisions in bifurcated trials is a perplexing one on which the lower courts and the bar need guidance, particularly when the sole reason for the bifurcated trial was the status of the defendants as an exempt governmental body and an employee of that body. 96-0715 (La.6/21/96); 675 So.2d 1092.

Motion for JNOV
A motion for a JNOV may be granted only if the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable jurors could not arrive at a contrary verdict. 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2524 (2d ed.1995).
The court of appeal correctly set aside the JNOV. The jury decided that Singleton was not negligent, and the court of appeal noted that the jury apparently credited the testimony of the bus driver and the driver of the stopped vehicle (who testified that Officer Jones opened the door on the driver's side when the bus was passing) over the testimony of the two police officers and the bus passenger that the trial judge found most credible. Inasmuch as the evidence was of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion for JNOV should have been denied. Scott v. Hospital Serv. Dist. No. 1 of the Parish of St. Charles, 496 So.2d 270 (La.1986).

Manifest Error
An appellate court generally reviews the factual findings of a trial court according to the manifest error standard of review. This standard, which applies equally in jury trials and judge trials, has best been stated as follows:

*1329 When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.
Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).
In the present case, the court of appeal, while concluding that "the trial court was clearly wrong in granting plaintiff's motion" for a JNOV, further concluded that "[t]he jury verdict is supported by competent evidence and is not wholly unreasonable." Thus the intermediate court applied the manifest error standard to the jury verdict and determined there was no manifest error committed by the jury. The problem is that once the court of appeal set aside the JNOV, there remained two decisions by triers-of-fact of equal dignity, and the court of appeal ignored the trial judge's decision while adopting the jury verdict. The decision by the court of appeal that the trial judge was wrong in granting a motion for JNOV, based on the "reasonable minds could not differ" standard, did not decide that the trial judge's original decision on the merits in the bifurcated trial was also wrong, based on the entirely different manifest error standard. The appellate court therefore erred in not addressing both of the conflicting decisions, that of the jury and that of the trial judge, under the manifest error standard.

Inconsistent Decisions in Bifurcated Trials

I
At the time of this trial in 1994, La.Rev. Stat. 13:5105 provided in part that "[n]o suit against a political subdivision of the state shall be tried by jury."[3] Because the RTA was a political subdivision of the state, La. Rev.Stat. 48:1654, a jury trial against the RTA was prohibited. The RTA employee, however, requested trial by jury as to her liability.
In Champagne v. American Southern Ins. Co., 295 So.2d 437 (La.1974), this court addressed the issue of whether La.Rev.Stat. 13:5105 (then 5104) prohibits a jury trial of any portion of the case when the state is one of several defendants in the action, either by cumulation in one action or by consolidation of several actions. Reviewing the Code articles pertaining to jury trials, this court noted that La.Code Civ. Proc. art. 1735 (now Article 1736) contemplates that some issues may be tried by the jury while others in the same trial may be decided by the judge. The Champagne decision held that a single trial is permitted with the judge determining the issues relative to the state and the jury determining all the other issues.
The court in Champagne noted the possibility of inconsistent decisions, but stated that the judge has the power to set aside a jury decision with which he or she is not in accord[4] and the appellate court has the constitutional *1330 right to review findings of fact of both judge and jury. The court did not mention the manifest error standard for such appellate review which had been adopted one year earlier, but review of factual findings under that standard, by granting due deference to the decisions of both the jury and the judge, obviously would not reconcile conflicting decisions if each decision was supported by record evidence and therefore was not manifestly erroneous.
The case of Thornton v. Moran, 341 So.2d 1136 (La.App. 1st Cir.1976), involved actions against each other by the drivers in a twovehicle collision. The two actions were consolidated because of the common issues of law and fact, and were tried concurrently, one by the jury (as requested in one of the consolidated cases) and the other by the judge. The two triers-of-fact reached contradictory results, and conflicting judgments were rendered in the two cases. Using the Canter v. Koehring Co. standard, the court of appeal reviewed the cases separately, noting that each decision should not be disturbed in the absence of manifest error. Stating that "[i]f the results reached in these cases after our review remain contradictory or should they conform one to the other, so be it," the court found a reasonable factual basis to support the conclusion reached by each trier-of-fact and essentially affirmed each judgment.
This court peremptorily granted the applications for certiorari, without briefing or oral argument,[5] and rendered the following order:
Writ granted. Judgment of court of appeal reversed; case remanded to court of appeal to resolve the differences in the factual findings between the jury and the judge in these consolidated cases and to render a single opinion based upon the record. La. Const. Art. 5, § 10(B); Rights of parties to reapply for writs in accordance with law after court of appeal renders decision in accordance with views herein expressed are reserved.
Thornton v. Moran, 343 So.2d 1065 and 1066 (La.1977).
On remand, the court of appeal reconciled the judgments, holding that the jury's decision was more reasonable. Thornton v. Moran, 348 So.2d 79 (La.App. 1st Cir.), cert. denied, 350 So.2d 897 (La.1977).
Since the Thornton decision, the courts of appeal have adopted varying procedures for reconciling conflicting decisions by the jury and the judge in bifurcated trials. We do not reach in this case the questions of whether to overrule Thornton's mandate to reconcile conflicting decisions rather than to give due deference to each,[6] or of how to reconcile the decisions if it is necessary to do so. We address only the threshold question of whether there should be a bifurcated trial at all when there is only one tortfeasor and the other defendant is only vicariously liable for that tortfeasor.

II
When an action involves only two defendants, an employee of a political subdivision of the state and the political subdivision itself which is not independently negligent and can only be liable vicariously, separate trials of each defendant with separate triers-of-fact *1331 serve no useful purpose except to accord the employee of the targeted defendant his or her arguable statutory right to a jury trial. On the other hand, separate trials promote the substantial possibility of inconsistent decisions on the liability of the employee, with the additional possibility of inconsistent quantum awards.
We granted certiorari to consider whether we should modify the Champagne decision and mandate that there be only one trier-of-fact in this situation. Such a ruling would eliminate the untenable result (as in the present case) in which the jury may find the employee was not at fault, but the judge may find the employer vicariously liable based on the fault of the alleged tortfeasor whom the jury exonerated. See also Aubert v. Charity Hosp. of La., 363 So.2d 1223 (La.App. 4th Cir.), cert. denied, 365 So.2d 242 (La.1978). During our study of the inherent problems, including the issue of whether the single trier-of-fact should be the judge or the jury, we discovered that the Legislature has already provided the solution, which apparently has been generally overlooked in the trial courts.
In 1988, the Legislature amended La.Rev. Stat. 13:5101, which had previously made La. Rev.Stat. 13:5101-5114 (now known as the Louisiana Governmental Claims Act) applicable "to any suit ... against the state, a state agency, or a political subdivision of the state." The 1988 amendment made La.Rev. Stat. 13:5101-5114 also applicable to "any suit ... against an officer or employee of a political subdivision arising out of the discharge of his official duties or within the course and scope of his employment." When Section 5101 after the 1988 amendment is read together with Section 5105,[7] the prohibition of jury trials against a political subdivision in Section 5105 extends to employees of the political subdivision when the suit arose out of the discharge of the officer's or employee's official duties or the officer or employee was in the course and scope of employment at the pertinent time.[8] Thus any actions against both a political subdivision and its employee tried after the 1988 amendment to Section 5101 should have been tried by the judge alone without a jury.
The present case involving a 1990 accident was tried in 1994, long after the 1988 amendment to La.Rev.Stat. 13:5101 extended the prohibition against jury trials to employees of a political subdivision. When this case was tried, the RTA was a political subdivision of the state, and Singleton was an employee of a political subdivision in the course and scope of employment at the time of the alleged negligence.[9] The action therefore *1332 should have been tried by the judge alone without a jury.
Accordingly, the jury trial of Singleton's liability was incorrect, and the verdict of the jury must be disregarded. In the bench trial of the RTA's liability (at which the employee's liability also should have been tried), the judge found the RTA employee negligent and ruled that the RTA was vicariously liable for the tort of its employee. This is the decision that should be subjected to appellate review.
Inasmuch as the court of appeal has not reviewed the decision of the trial judge, we remand the case to the court of appeal to review the decision on liability under the manifest error standard and the decision on quantum under the much discretion standard.[10]

Decree
The judgment of the court of appeal that reinstated and affirmed the jury verdict is set aside. The case is remanded to the court of appeal to review the decision rendered by the trial judge in a manner consistent with this opinion.
JOHNSON, J., concurs in result.
NOTES
[*] Victory, J., not on panel. Rule IV, Part II, § 3.
[1] There was a factual dispute over whether Officer Jones was opening or closing the driver's door at the time of the collision.
[2] The judge, who found the RTA liable based on Singleton's negligence, implicitly found that the RTA was not independently negligent, and the court of appeal properly concluded that there was insufficient evidence in the record to support a finding of independent negligence by the RTA. Thus the RTA was only vicariously liable for Singleton's negligence.
[3] Before a 1993 amendment, La.Rev.Stat. 13:5105 also prohibited a jury trial against the state or a state agency.
[4] The court attributed this power to La.Code Civ. Proc. arts. 1812 and 1813. Article 1812 at the time authorized the trial judge, when the jury's answers to written interrogatories were inconsistent with the general verdict of the jury, to return the jury for further consideration of its answers or to order a new trial. Article 1813 at the time authorized the judge to grant a new trial if the plaintiff or the defendant did not consent to the entry of a remittitur or an additur. Neither article appears to have authorized the trial judge to reconcile inconsistent decisions of the jury and the judge in a bifurcated trial.

In Lemire v. New Orleans Pub. Serv., Inc., 458 So.2d 1308 (La.1984), this court, citing Champagne, stated in dicta that the trial judge could reconcile inconsistent decisions on a motion for JNOV or for new trial. However, as the present case illustrates, inconsistent decisions on liability cannot be reconciled by a JNOV if reasonable minds could differ with respect to the evidence.
[5] Justice Summers dissented from the "ex parte in chambers reversal of the judgment of the court of appeal without a hearing and opportunity for the parties to be heard." Justices Calogero and Dennis noted that "the writ should be granted and the case taken up in this Court in the normal course, with oral arguments followed by written opinion."
[6] Take, for example, a case involving two tortfeasor defendants in which the jury finds D-1 (the non-governmental tortfeasor) sixty percent at fault and awards $120,000 in damages, while the judge finds D-2 (the governmental tortfeasor) fifty percent at fault and awards $100,000 in damages. Arguably, there is no reason why the appellate court, upon finding no manifest error in either allocation of fault and no abuse of discretion in either award of damages, should not affirm both decisions. The plaintiff would recover $72,000 from D-1 and $50,000 from D-2, arguably an over-recovery, but there would have been an "under-recovery" ($98,000) if the jury had assessed only forty percent of the fault to D-1.

Whether such a true manifest error review or one of the other approaches adopted by various courts of appeal should be applied in a multiple tortfeasor case is a question for another day.
[7] At the time of the 1994 trial in the present case, Section 5101 and 5105A provided in part as follows:

This Part applies to any suit in contract or for injury to person or property against the state, a state agency, or a political subdivision of the state, as defined herein, or against an officer or employee of a political subdivision arising out of the discharge of his official duties or within the course and scope of his employment.
La.Rev.Stat. 13:5101 (emphasis added).
A. No suit against a political subdivision shall be tried by jury.
La.Rev.Stat. 13:5105A.
A 1996 amendment to La.Rev.Stat. 13:5101 made the Louisiana Governmental Claims Act also applicable to officers or employees of the state of a state agency. La. Acts 1996, 1st Ex. Sess., No. 63. However, the prohibition of jury trials against the state and a state agency had already been legislatively eliminated in 1993. See La.Rev.Stat. 13:5105, as amended by La. Acts 1993, No. 993. Moreover, a political subdivision may now waive the prohibition against jury trials. See La.Rev.Stat. 13:5105D, added by La. Acts 1996, 1st Ex.Sess., No. 63.
[8] This legislative solution is somewhat analogous to that reached by the court in Rome v. Traylor, 620 So.2d 1163 (La.1993), which involved the question of whether the Sheriff's employees (the tortfeasors) were required to furnish security for a suspensive appeal when the Sheriff (the tortfeasor's employer) was permitted statutorily to appeal suspensively without furnishing security. This court held that the Sheriff and his deputies should be treated as one party (the employer) for purposes of the exemption from furnishing security.
[9] At trial, Singleton testified that she was a "bus operator for the RTA." No one disputed the employment relationship at trial, but the RTA (whose attorney answered the suit on her behalf) stated in a footnote in brief to this court that Singleton's employer was a private corporation that operated the public transit system under a management contract with the RTA that included an indemnity provision. However, the private corporation was not mentioned in this record, which clearly established that Singleton was an employee of the RTA who was vicariously liable for her torts in the course and scope of employment.
[10] There is a difference between the appellate review of factual findings under the manifest error standard, as stated in the Canter v. Koehring Co. decision, and the review of the quantum of damages awards under the much discretion standard. In the latter case, the award, if abusive of discretion, is not disregarded, but rather is reduced to the highest amount or raised to the lowest amount within the reasonable range of discretion. Coco v. Winston Indus., 341 So.2d 332 (La.1976).